UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| FRANCES QUINN ERICKSON,<br><br>            Plaintiff,<br><br>v.<br><br>REALPAGE, INC., (a/k/a LEASINGDESK SCREENING),<br><br>            Defendant. | Civil Action No.: 1:23-cv-83<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Frances Quinn Erickson ("Plaintiff"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against RealPage, Inc. (a/k/a LeasingDesk Screening) ("RealPage"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681 *et seq*.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

3. Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at the District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff resides in Austin, Texas and qualifies as a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

1

5.      RealPage is a "consumer reporting agency," as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

6.      RealPage is a Delaware corporation doing business throughout the United States, including in the State of Texas. Through its subsidiary LeasingDesk Screening, Defendant operates a principal place of business at 2201 Lakeside Boulevard, Richardson, Texas 75082. Defendant may be served at its principal place of business.

7.      At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## **FACTUAL ALLEGATIONS**

8.      Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

9.      In or around November 2022, Plaintiff and her significant other decided to move to Texas.

10.      In or around November 2022, Plaintiff and her significant other traveled to Texas in order to tour apartment complexes.

11.      Plaintiff immediately fell in love with an apartment in Austin, Texas. However, as will be discussed in greater detail below, Plaintiff was denied for the apartment due to Defendant's inaccurate and materially misleading reporting.

### **Case No. P00181180**

12.      In April 2018, Plaintiff had an altercation with her roommate at the time.

13.      As a result of the altercation, Plaintiff was charged with two counts of assault, one count of assault in the 4th degree and one count of assault in the 2nd degree.

14.      Ultimately, Plaintiff entered into a plea agreement.

15. As a part of the plea agreement, the count of assault in the 4th degree was dismissed, and the count of assault in the 2nd degree ("Assault 2") was amended down to assault in the 4th degree ("Assault 4").

16. Accordingly, Plaintiff was only ever convicted of one count of Assault 4, a misdemeanor.

17. Plaintiff was **not** convicted of Assault 2, a felony.

## Plaintiff's Application to The Arnold

18. Plaintiff fell in love with The Arnold, an apartment complex in Austin, Texas after touring the property in or around November 2022.

19. On November 18, 2022, Plaintiff submitted an application for tenancy at The Arnold.

20. As a part of her application, Plaintiff consented to a background check.

21. Plaintiff was confident that she would be approved, as she only has a single misdemeanor conviction.

22. Upon information and belief, The Arnold purchased Plaintiff's tenant screening report ("background report" or "consumer report") from Defendant on or about November 18, 2022.

23. Upon information and belief, Defendant completed Plaintiff's RealPage background report on or before November 19, 2022.

24. Upon information and belief, Defendant provided The Arnold with a copy of Plaintiff's RealPage background report on or before November 19, 2022.

25. On or about November 19, 2022, Plaintiff received an email from RealPage on behalf of The Arnold denying her rental application.

26. The denial email informed Plaintiff that The Arnold was "unable to approve [her] application at this time" due to "criminal and other public records unsatisfactory."

27. Plaintiff was confused as she did not believe there was any reason for her criminal history to disqualify her from tenancy at The Arnold.

28. On November 21, 2022, Plaintiff emailed The Arnold asking to discuss the reason for her denial.

29. Thereafter, Plaintiff spoke to The Arnold by phone.

30. During the call, Plaintiff learned that Defendant was reporting a felony for "Assault 2" on her background report.

31. As discussed above, Plaintiff was not convicted of a felony. The Assault 2 charge was amended down to Assault 4, a misdemeanor.

32. The Arnold also informed Plaintiff that she would need to request a copy of her background report from Defendant.

33. Thereafter, Plaintiff requested a copy of her consumer report from Defendant.

34. On November 23, 2022, Plaintiff received a copy of her background report.

35. After reviewing her background report, Plaintiff was shocked to see that her criminal history was reported inaccurately.

36. Specifically, the "Criminal & Other Records" section included two criminal records from Whitman County District Court.

37. The first charge was for "Assault- 2 With Deadly Weapon," with a record date of August 28, 2020.

38. The disposition indicated "Amended | Closed."

39. However, the entry failed to indicate whether the Assault 2 charge was the initial charge or the amended charge.

40. Accordingly, Defendant's reporting made it appear as though Plaintiff was in fact convicted of Assault 2 (which she was not).

41. The second charge was for "Assault 4th Degree."

42. The disposition indicated "Guilty | Closed."

43. The entry did not indicate that this charge was the *result* of the Assault 2 being amended down.

44. Accordingly, Defendant's reporting made it appear as though Plaintiff was convicted of *both* Assault 2 and Assault 4 (which she was not).

45. As discussed above, Plaintiff has **never** been convicted of a **felony.**

46. It is patently inaccurate to report both the Assault 2 and Assault 4 charges without indicating that the Assault 2 was amended down to the Assault 4 that was reported separately.

47. In the alternative, it is materially misleading to report both the Assault 2 and Assault 4 charges without indicating that the Assault 2 was amended down to the Assault 4 that was reported separately.

48. Regardless, Defendant's reporting made it appear as though Plaintiff was convicted of both Assault 2 and Assault 4, which she was not.

49. Furthermore, Defendant's reporting of the Assault 2 on Plaintiff's background report made it appear as though Plaintiff was convicted of a felony, which she was not.

50. Both entries also failed to indicate the "type/level" of the charge.

51. It is materially misleading to report criminal records without also indicating the type/level (i.e. misdemeanor or felony) of the charge.

52. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the public court records from the Whitman County District Court prior to publishing Plaintiff's report to her prospective landlords.

53. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the Assault 2 charge was amended down to the Assault 4 charge, and accordingly, Plaintiff had not been convicted of a felony, but rather merely a misdemeanor.

54. On December 5, 2022, Plaintiff learned that one of the leasing agents at The Arnold submitted a dispute with Defendant on her behalf.

55. On December 6, 2022, Plaintiff received a second denial email from RealPage on behalf of The Arnold.

56. The email stated Plaintiff's application was denied based on "Criminal and other public records unsatisfactory."

57. Plaintiff was confused. The Arnold has informed her that as long as the felony was removed, she would be approved.

58. On December 6, 2022, Plaintiff called The Arnold.

59. The Arnold informed Plaintiff that as long as the felony Assault 2 was removed, she would be approved.

60. On December 8, 2022, The Arnold informed Plaintiff that Plaintiff was still denied for the apartment and that the decision was final.

61. Plaintiff was devasted. She did not understand why she was not being approved when The Arnold told her that her misdemeanor record was not going to disqualify her from living at The Arnold.

62. On December 14, 2022, Plaintiff spoke with The Arnold by phone and was again told that she was being denied for the apartment due to her background check.

63. Plaintiff reasonably believes that had Defendant reported her criminal history accurately from the get-go, The Arnold would not have been tainted by the inaccurate reporting, and she would have been approved for the apartment regardless of her own misdemeanor.

64. Upon information and belief, had Defendant not inaccurately reported two pending felony charges on Plaintiff's consumer report, Plaintiff would have been approved for an apartment at The Arnold.

**Plaintiff's Application to 7East**

65. After being denied by The Arnold, Plaintiff was forced to apply elsewhere or give up on her plan to move to Texas with her significant other.

66. Plaintiff submitted an application for tenancy at 7East in Austin, Texas on December 9, 2022.

67. As a part of her application, Plaintiff consented to a background check.

68. Plaintiff was hopeful that she would not face the same issues with her background check for 7East as she did with The Arnold.

69. Plaintiff proactively warned 7East of the issues she faced with The Arnold as a result of Defendant's inaccurate reporting.

70. 7East informed Plaintiff that her criminal history would not disqualify her from renting at 7East.

71. Upon information and belief, 7East purchased Plaintiff's background report from Defendant on or about December 9, 2022.

72. Upon information and belief, Defendant completed Plaintiff's RealPage background report on or before December 9, 2022.

73. Upon information and belief, Defendant provided 7East with a copy of Plaintiff's RealPage background report on or before December 9, 2022.

74. On or about December 12, 2022, Defendant emailed Plaintiff a copy of the background report provided to 7East.

75. Plaintiff was devastated to learn that the inaccurate reporting was in fact published to yet another apartment complex.

76. Specifically, the "Criminal & Other Records" section included two criminal records from Whitman County District Court.

77. The first charge was for "Assault- 2 With Deadly Weapon," with a record date of August 28, 2020.

78. The disposition indicated "Amended | Closed."

79. However, the entry failed to indicate whether the Assault 2 charge was the initial charge or the amended charge.

80. Accordingly, Defendant's reporting made it appear as though Plaintiff was in fact convicted of Assault 2 (which she was not).

81. The second charge was for "Assault 4th Degree."

82. The disposition indicated "Guilty | Closed."

83. The entry did not indicate that this charge was the *result* of the Assault 2 being amended down.

84. Accordingly, Defendant's reporting made it appear as though Plaintiff was convicted of *both* Assault 2 and Assault 4 (which she was not).

85. Additionally, neither of the entries indicated the "type/level" of the charge.

86. As discussed above, Defendant's reporting was patently inaccurate.

87. In the alternative, Defendant's reporting was materially misleading.

88. However, this time, Plaintiff was determined to make Defendant fix its inaccurate reporting.

89. On December 12, 2022, Plaintiff disputed with Defendant.

90. Plaintiff informed Defendant that the Assault 2 charge was amended down to Assault 4 and that she was not convicted of Assault 2.

91. On December 12, 2022, Plaintiff emailed Defendant a copy of the court records demonstrating that the Assault 2 charge was amended down to Assault 4, a misdemeanor.

92. Upon information and belief, Defendant failed to forward Plaintiff's dispute to the furnisher of the information.

93. Upon information and belief, Defendant failed to reasonably investigate Plaintiff's dispute.

94. On December 14, 2022, Plaintiff received two dispute responses from Defendant.

95. The first dispute response concerned Plaintiff's report for The Arnold.

96. The dispute response stated that Defendant "confirmed that part of the dispute information is accurate and also [] that part of the disputed information is inaccurate, incomplete, or cannot be verified…"

97. Specifically, Defendant's investigation "confirmed that the charge of ASSAULT-2 WITH DEADLY WEAPON for Case# P00181180 was amended and should not be considered…"

98. Plaintiff did not receive a copy of a revised report.

8

99. The second dispute response concerned Plaintiff's report for 7East.

100. The dispute response stated that Defendant "confirmed that the disputed information is accurate."

101. However, Defendant then indicated that it's investigation "confirmed that the charge of ASSAULT-2 WITH DEADLY WEAPON for Case# P00181180 was amended and should not be considered…"

102. Plaintiff did not receive a copy of a revised report.

103. It is unclear why Defendant's dispute responses for The Arnold and 7East were different.

104. It is also unclear why Defendant failed to provide revised copies of Plaintiff's background reports.

105. On December 15, 2022, 7East emailed Plaintiff and informed her that they would need the report to be amended in order to approve her application.

106. On or about December 15, 2022, Plaintiff called Defendant.

107. Plaintiff hoped to figure out why her dispute responses were different and get an updated copy of her background report for 7East.

108. Defendant informed Plaintiff that it had made an error with her 7East dispute response and to request a copy of her background report online.

109. Thereafter, Plaintiff requested a copy of her updated report.

110. On December 19, 2022, Plaintiff received a copy of her RealPage file.

111. Plaintiff was confused. Her file had no records at all.

112. On December 21, 2022, Plaintiff spoke to 7East to see if they received a copy of the report with no criminal records.

113. 7East informed Plaintiff that it did not receive a copy of a revised report, it merely received an email indicating that Defendant's investigation "confirmed that the charge of ASSAULT-2 WITH DEADLY WEAPON for Case# P00181180 was amended and should not be considered… [and] that the charge of ASSAULT 4TH DEGREE is a misdemeanor…"

114. Thereafter, Plaintiff learned she was approved by 7East.

115. Although approved, Defendant's inaccurate reporting delayed Plaintiff's approval.

116. Upon information and belief, had Plaintiff not engaged in extraordinary measures, Plaintiff would have also been denied for 7East due to Defendant's inaccurate reporting.

117. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it includes in tenant screening reports.

118. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

119. For example, upon information and belief, Defendant reported both the Assault 2 and Assault 4 charges without confirming with the public court records whether Plaintiff was in fact convicted of both charges.

120. Instead of employing reasonable procedures, as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own tenant screening products.

121. Upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

122. Defendant is aware that criminal information is often inaccurate, incomplete, and/or outdated.

123. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

124. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

125. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with reliable third-party vendors.

126. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

127. Upon information and belief, Defendant has been sued under the FCRA by consumers in the past for reporting inaccurate, incomplete, and/or materially misleading criminal records.

128. Therefore, Defendant has actual notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

129. Defendant knows that its services are used to make significant consumer decisions.

130. Upon information and belief, Defendant knew or should have known that the information it provides to rental companies and landlords is used to determine whether a tenant's application is approved.

131. Upon information and belief, Defendant knew or should have known that rental companies and landlords make decisions on tenants' applications based solely on the information contained in its reports.

132. Upon information and belief, Defendant purchases criminal records information from third-party vendors.

133. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

134. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

135. Upon information and belief, Defendant knew or has reason to know that the third-party vendors it purchases consumers' information from often provide inaccurate and incomplete records.

136. Upon information and belief, Defendant reported and published unverified criminal information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

137. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

138. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

139. As a direct result of Defendant's conduct, Plaintiff was denied for an apartment at The Arnold.

140. As a direct result of Defendant's conduct, Plaintiff's approval with 7East was delayed.

141. Further, because Plaintiff's moving date was determined last minute, Plaintiff faced higher moving costs.

142. As a direct result of Defendant's conduct, Plaintiff is afraid that the inaccurate reporting will result in rental or job denials in the future.

143. Defendant's conduct has also caused Plaintiff to suffer from anxiety, frustration, and stress.

144. Consequently, Plaintiff was distracted at work and her work product suffered.

145. As a direct result of Defendant's conduct, Plaintiff has difficulty falling asleep. Consequently, Plaintiff suffers from sleepless nights.

146. Defendant's conduct also caused Plaintiff to be embarrassed and humiliated because she was inaccurately reported as a felon.

147. As a direct result of Defendant's conduct, Plaintiff has suffered actual damages including but not limited to: rental denial, wasted time, wasted money, damage to her reputation, sleepless nights, and emotional distress, including mental anguish, anxiety, stress, frustration, humiliation, and embarrassment.

## COUNT I

### Defendant's Violations of 15 U.S.C. § 1681e(b)

148. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

149. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681a(d).

150. In the parlance of the FCRA, tenant screening reports are "consumer reports."

151. The FCRA provides a number of protections for rental applicants who are subject to tenant screening reports.

152. The FCRA imposes duties on consumer reporting agencies, like Defendant, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

153. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

154. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report.

155. Specifically, Defendant failed to establish, maintain, and/or follow procedures to prevent it from inaccurately reporting Plaintiff's criminal history.

156. Instead, upon information and belief, Defendant blindly relied on a third-party vendor's information, despite knowing that criminal record information is often incomplete, inaccurate, and/or outdated and that third-party vendors do not warrant the accuracy of the information they sell.

157. As a result of Defendant's conduct, action and inaction, Plaintiff has suffered actual damages, including but not limited to: rental denial, wasted time, damage to her reputation,

sleepless nights, and emotional distress, including mental anguish, anxiety, stress, frustration, humiliation, and embarrassment.

158. Defendant's violations of the FCRA were willful and knowing. Further, Defendant's violations were committed in reckless disregard of Plaintiff's rights as a consumer. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

159. Alternatively, Defendant's violations of the FCRA were negligent, rendering it liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

160. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT II

### Defendant's Violations of 15 U.S.C. § 1681i

161. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

162. On or about December 12, 2022, Plaintiff disputed with Defendant.

163. Thereafter, Defendant's duties as a consumer reporting agency under 15 U.S.C. § 1681i were triggered.

164. Upon receipt of a consumer dispute, a consumer reporting agency is required to forward the dispute to the furnisher of the disputed information and conduct a reasonable investigation of the consumer's dispute. 15 U.S.C. § 1681i(a)(1)-(2).

165. A "reasonable investigation," requires, among other things, that the consumer reporting agency consider all relevant information when evaluating a consumer's dispute. 15 U.S.C. § 1681i(a)(4).

166. If the investigation reveals that the disputed information is inaccurate, incomplete, or unverifiable, the consumer reporting agency is required to delete or modify the information at issue. 15 U.S.C. § 1681i(a)(5).

167. Thereafter, the consumer reporting agency must forward the results of the investigation to any party who received the disputed information. 15 U.S.C. § 1681i(a)(5).

168. Upon information and belief, Defendant violated 15 U.S.C. § 1681i(a)(4) by failing to forward Plaintiff's dispute to the party or parties that furnished the inaccurate information.

169. Upon information and belief, Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation of the information reported on Plaintiff's background report upon receiving Plaintiff's dispute.

170. Upon information and belief, Defendant failed to consider all relevant information when investigating Plaintiff's dispute. 15 U.S.C. § 1681i(a)(4).

171. Upon information and belief, Defendant violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed, inaccurate information from Plaintiff's file after learning its own act or omission resulted in the inclusion of inaccurate information in Plaintiff's file.

172. As a result of Defendant's inaccurate reporting, Plaintiff suffered actual damages, as detailed herein.

173. Defendant's violations of the FCRA were willful and knowing.

174. Further, Defendant's violations were committed in reckless disregard of Plaintiff's rights as a consumer.

175. Accordingly, Defendant is liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

176. Alternatively, Defendant's violations of the FCRA were negligent, rendering it liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

177. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## **TRIAL BY JURY**

178. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Frances Quinn Erickson, respectfully requests judgment be entered against Defendant, for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

E. Any pre-judgment and post-judgment interest as may be allowed under the law; and

F. Other and further relief as the Court may deem just and proper.

Respectfully submitted this 26th day of January 2023.

*/s/ David A. Chami*
David A. Chami, AZ No. 027585
**The Consumer Justice Law Firm**
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2359
Email: dchami@cjl.law

*Attorneys for Plaintiff*
*Frances Quinn Erickson*